UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,  :  19-CR-00367 (MKB)

                           :
                           :
                           :  United States Courthouse
       -against-           :  Brooklyn, New York
                           :
                           :
                           :  August 7, 2024
                           :  3:00 p.m.
 CARLOS ANGUCHO GUERRERO,   :
                           :
          Defendant.       :

- - - - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE DISTRICT JUDGE


A P P E A R A N C E S:

For the Government:      BREON PEACE, ESQ.
                         United States Attorney
                         Eastern District of New York
                             271 Cadman Plaza East
                             Brooklyn, New York 11201

                         BY:  MARGARET SCHIERBERL, ESQ.
                              Assistant United States Attorney

For the Defendant:       DIAZ & MOSKOWITZ, PLLC
                             225 Broadway
                             New York, New York 10007

                         BY:  JOHN ANTHONY DIAZ, ESQ.

Court Reporter:          JAMIE ANN STANTON, RMR, CRR, RPR
                         225 Cadman Plaza East
                         Brooklyn, New York 11201
                         Telephone: (718) 613-2274
                         E-mail:  JamieStanton.edny@gmail.com

Proceedings recorded by computerized stenography.  Transcript produced by Computer-aided Transcription.

(In open court.)

THE COURTROOM DEPUTY:  This is a criminal cause for a change of plea hearing, docket 19-CR-00367, USA versus Carlos Angucho Guerrero, et al.

Could Counsel please state their names for the record, starting with the Government.

MS. SCHIERBERL:  Good afternoon, Your Honor. Margaret Schierberl for the United States.

THE COURT:  Good afternoon.

MR. DIAZ:  Good afternoon, Your Honor.  John Diaz, appearing for the Defendant, Mr. Carlos Angucho Guerrero, who is in custody and seated to my left.

THE COURT:  Good afternoon.

And then we have an interpreter?  If you could state your name.

THE INTERPRETER:  Rosa Olivera, previously sworn.

THE COURT:  You can have a seat.

MR. SHERMAN:  Thank you.

THE COURT:  Mr. Angucho Guerrero, I'm Judge Scanlon.  I am a Magistrate Judge here.  As I'll explain in a little while, your case is assigned to a District Judge, Judge Brodie, she is our Chief District Judge, in fact, but she's asked me to help with this part of your case.

So I'm going to start with a question for the Government.  Are there victims of the alleged offenses?  And

if so, has the Government notified them of today's hearing and of the right to attend and be heard?

MS. SCHIERBERL:  Thanks, Judge.  There are no victims in this case.

THE COURT:  All right.  So we're going to move to this change of plea.  I just want to make sure everybody has the same document.

So there is a plea agreement, and I will go over that in some detail in awhile.  I've marked it as Court Exhibit 1, so I may refer to it interchangeably as the plea agreement or as Court Exhibit 1.

(Court Exhibit 1 was so-marked.)

THE COURT:  There is a consent of a plea taken before a Magistrate Judge.  I am going to go over that. There is an elements sheet which is dated August 6th that was provided by the Government.  And I also have a copy of the indictment.

Has Counsel seen all of those documents?

MR. DIAZ:  Yes, Your Honor, I have.

THE COURT:  So as we go along today, many of the documents are in English and many of my questions are going to be about whether the Defendant has had the documents translated for him and also about communications between defense counsel and the Defendant.

So based on what I was hearing before we actually

started, I suspect that you, Mr. Diaz, are fluent in Spanish?

MR. DIAZ: Yes, Your Honor, I am fluent in Spanish. And I have translated the agreement and all the documents we've referenced several times with Mr. Angucho Guerrero.

THE COURT: And then when you speak with him, have you been able to have your conversations in Spanish?

MR. DIAZ: Yes, Your Honor.

THE COURT: Okay. And both Counsel, for almost all of this, you can stay seated, if you don't mind. Just have the microphone so that I and the court reporter can hear you well.

And have you had any difficulty communicating with the Defendant in Spanish?

MR. DIAZ: No, Your Honor, I have not.

THE COURT: So Mr. Angucho Guerrero, as we go along today, I'm going to be asking you many questions and providing you with information. And it's my understanding that you have decided that you would like to enter into a plea agreement and plead guilty to one of the counts, or a count in the indictment. And it's my role here to make sure that you understand your rights and the consequences of this decision.

THE DEFENDANT: Yes.

THE COURT: So along the way, I am going to ask you many questions and provide you with information just to make sure that you do understand everything. And I would like that you answer my questions under oath. So what we're going to do is administer the oath to you. This is the one part that I will ask you and your attorney to stand for.

THE COURTROOM DEPUTY: Raise your right hand, please.

(Defendant sworn.)

THE DEFENDANT: Yes.

THE COURT: That's good. You can have a seat. Put your hand down.

And if you can, for the record, state your full name.

THE DEFENDANT: My name is Carlos Ernesto Angucho Guerrero.

THE COURT: Do you understand that, having just taken the oath, the answers that you provide to my questions today will be subject to the penalties of perjury or making a false statement if you don't answer the questions truthfully?

THE DEFENDANT: Yes.

THE COURT: If you do answer the questions falsely, the Government could decide to prosecute you for the crime of perjury or of making a false statement, and the

Government could use the false statements that you make today during that prosecution.

Do you understand?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So as I had mentioned when we started, your case is assigned to the Chief District Judge, Judge Brodie. Judge Brodie is the judge who will make the ultimate decision as to whether to accept your plea and, if she does, to sentence you. You have the right to have Judge Brodie listen to your change of plea and if you decide you would like to do that, there won't be any prejudice to you, or you can proceed before me here today.

I am just going to briefly explain the process.

As you can see up front, we have a court reporter. The court reporter is typing everything that's being said here today during this proceeding. And when the proceeding is done, the court reporter will prepare a transcript or a written record of everything that's said during the proceeding. That transcript will be provided to Judge Brodie and Judge Brodie will read it in connection with deciding whether to accept your plea and, if she does, with your sentence.

Do you wish to give up your right to have Judge Brodie listen to your plea and instead go ahead with this proceeding before me today?

THE DEFENDANT: Yes, I do.

THE COURT: And did you discuss that decision with your attorney?

THE DEFENDANT: Yes.

THE COURT: Did you have a sufficient opportunity to do so?

THE DEFENDANT: Yes.

THE COURT: And did you have your discussions about this issue and all the other issues in the case in Spanish with your attorney?

THE DEFENDANT: Yes, yes.

THE COURT: And did you have any difficulty communicating with him?

THE DEFENDANT: No.

THE COURT: Are you deciding to proceed before me voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any threats or promises to you to get you to agree to proceed before me?

THE DEFENDANT: No.

THE COURT: All right. In connection with your decision to proceed before me, I have this one page, I'm holding it up so you can see it, and what it says, it's a consent to have the plea taken before me. So this document's written in English.

Was it read to you in Spanish?

THE DEFENDANT:  Yes.

THE COURT:  And who read it to you?

THE DEFENDANT:  The attorney.

THE COURT:  Do you understand the form?

THE DEFENDANT:  Yes.

THE COURT:  Did you review it with the lawyer?

THE DEFENDANT:  Yes.

THE COURT:  And do you agree with what it says?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign the form?

THE DEFENDANT:  Yes.

THE COURT:  And, Counsel, did you sign the form?

MR. DIAZ:  Yes, Judge.

THE COURT:  And for the Government, did you sign?

MS. SCHIERBERL:  Yes, Judge.

THE COURT:  All right.  Based on what's been said here today, I believe the Defendant understands his right to proceed before me with this change of plea hearing, and he is doing so knowingly and voluntarily.

So I am going to conduct this change of plea hearing.  And I am also going to sign the consent form as well.  We'll file that on the Court's docket.

The next step in this is for me to get some background information about you.  The reason for this is

that I can assure yourself and in turn, Judge Brodie, that your plea is in fact a valid plea.  As we go along, if you don't understand anything I say, particularly my questions in the next section, let me know and I will try to clarify what I have said.

If you don't mind, if you can state your full name again for the record?

THE DEFENDANT:  Carlos Ernesto Angucho Guerrero.

THE COURT:  How old are you?

THE DEFENDANT:  Forty-two.

THE COURT:  What's the highest level of education that you have achieved?

THE DEFENDANT:  Secondary school.

THE COURT:  Is that like high school?

THE DEFENDANT:  In Columbia, yes.  In Columbia, it's basic and secondary until 10th grade.

THE COURT:  So how old were you when you finished secondary school?

THE DEFENDANT:  When I completed my secondary schooling, I was 16.

THE COURT:  And then after completing secondary school, have you had any other formal education?

THE DEFENDANT:  No.

THE COURT:  This is a different kind of background question.  Are you under or have you recently been under the

care of a doctor?

THE DEFENDANT: No.

THE COURT: Are you or have you recently been under the care of any mental health professional, such as a psychologist, psychiatrist, or social worker?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for any mental or emotional problems?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, have you taken any narcotic drugs?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, have you taken any medicine or pills?

THE DEFENDANT: No.

THE COURT: In the past 24 hours, have you had any alcoholic beverages?

THE DEFENDANT: No.

THE COURT: Have you ever been hospitalized or treated for an addiction to drugs or alcohol?

THE DEFENDANT: No.

THE COURT: Is your mind clear as you sit here today?

THE DEFENDANT: Yes.

THE COURT: Do you understand these proceedings?

THE DEFENDANT:  Yes.

THE COURT:  I am going to ask your attorney some background questions now.

So for Counsel, have you had any difficulties communicating with your client?

MR. DIAZ:  No, Your Honor.

THE COURT:  And have you discussed this case with him?

MR. DIAZ:  Yes, Your Honor.

THE COURT:  And, in particular, have you discussed the charge to which it's proposed he is going to plead guilty?

MR. DIAZ:  Yes, Your Honor.

THE COURT:  Are you satisfied that he understands the rights he will be waiving if he goes ahead with the guilty plea?

MR. DIAZ:  Yes, I do.

THE COURT:  In your opinion is he capable of understanding the nature of these proceedings?

MR. DIAZ:  Based on my interactions with him, Your Honor, yes.

THE COURT:  Do you have any doubt as to his competence to plead at this time?

MR. DIAZ:  I do not, Your Honor.

THE COURT:  And have you advised him of the

operation of the sentencing guidelines in this case?

MR. DIAZ: Yes, Judge.

THE COURT: And have you advised him of the possible sentencing consequences?

MR. DIAZ: I have, Your Honor.

THE COURT: And do you believe he understood what you said with regard to the possible sentencing consequences, and particularly the application of the sentencing guidelines?

MR. DIAZ: Yes, I have, Your Honor.

THE COURT: Do you have any reason why we shouldn't continue with this change of plea hearing?

MR. DIAZ: No, Your Honor.

THE COURT: So going back to the Defendant.

As has been mentioned to you before, as a defendant in a criminal case, you have the right to be represented by an attorney at every stage of your criminal case, including at today's proceeding. If you can't afford an attorney, the Court would appoint one to represent you.

And Counsel, you are appointed; is that correct?

MR. DIAZ: Yes, Your Honor, I am.

THE COURT: So your attorney here today has been appointed to represent you. And if you need to speak with him as we go along, we'll give you that opportunity.

As for the Defendant, have you had any difficulty

communicating with your attorney?

THE DEFENDANT:  No.

THE COURT:  And I know some of these questions are repetitive, they just go to different points along the way.

When you communicated with your attorney, have you done so in Spanish?

THE DEFENDANT:  Yes.

THE COURT:  Have you needed the assistance of an interpreter?

THE DEFENDANT:  No.

THE COURT:  Have you had enough time to discuss your case with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  Have you had a sufficient opportunity to review the decision to enter a guilty plea?

THE DEFENDANT:  Yes.

THE COURT:  And have you discussed with your attorney the possible sentencing consequences in your case?

THE DEFENDANT:  Yes.

THE COURT:  Have you discussed with your attorney the operation of the sentencing guidelines in your case?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand everything that he explained to you?

THE DEFENDANT:  Yes.

THE COURT: Are you fully satisfied with the representation and advice that your attorney has provided for you in this case?

THE DEFENDANT: Yes.

THE COURT: All right. In your case there is a document called the indictment. So that document is written in English. In that document, it contains the charges against you.

Has this document been translated for you?

THE DEFENDANT: Yes.

THE COURT: And do you understand all of the charges against you?

THE DEFENDANT: Yes.

THE COURT: And did you have sufficient opportunity to review the indictment with your attorney?

THE DEFENDANT: Yes.

THE COURT: And did you understand everything your attorney explained to you about the indictment?

THE DEFENDANT: Yes.

THE COURT: Counsel, do you want me to read the indictment aloud?

MR. DIAZ: No, Your Honor. We would waive a formal reading.

THE COURT: There are multiple charges in the indictment, but what's being proposed in connection with

this change of plea is that you are going to plead guilty to Count One of the indictment.

Count One charges you with a violation of various federal laws in an International Cocaine Distribution Conspiracy, which I'll just give the numbers of the particular statutes that that conduct violates, which is 21 United States Code Sections 963, 960(b)(1), (b)(2), and 959(d).

So what I am going to ask now is that the Government describe the elements of that count, which is the International Narcotics Distribution Conspiracy in violation of 21 United States Code Section 963.  The elements are outlined in the elements sheet, which is something prepared by the Government, and it's written in English.

So did you review this document with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand it?

THE DEFENDANT:  Yes.

THE COURT:  And when I say "elements," what I am talking about, this is what the Government would have to prove beyond a reasonable doubt at trial in order for a jury or the Court to find you guilty of this count.  And it will come up again when we get to the actual change of plea because I am going to ask you what it is that you did such

that you are, in fact, guilty of this count and we're going to have to cover each of these elements.

So I am going to ask the Government to state on the record the elements of the International Narcotics Distribution Conspiracy charge.

MS. SCHIERBERL:  The elements of Count One of the indictment which charges an International Narcotics Distribution Conspiracy in violation of Title 21 United States Code Section 963 are as follows:  In or about and between December 2016 and October 2017, two or more persons formed a criminal conspiracy and the Defendant agreed to join that conspiracy, the object of which was to distribute cocaine, a Schedule II controlled substance, with the knowledge or intent that the cocaine would be imported into the United States from a place outside thereof, and that the amount of cocaine involved in the conspiracy that was attributable to the Defendant by virtue of his own conduct and the conduct of his co-conspirators reasonably foreseeable to him was five kilograms or more of a substance containing cocaine.

THE COURT:  All right.  So for defense counsel, do you agree that the Government accurately stated the elements of the charge of International Narcotics Distribution Conspiracy?

MR. DIAZ:  Yes, Your Honor.

THE COURT:  And for the Defendant, do you understand those elements?

THE DEFENDANT:  Yes.

THE COURT:  Did you have a sufficient opportunity to review them with your attorney?

THE DEFENDANT:  Yes.

THE COURT:  For the Government, if you can describe on the record what evidence the Government would offer at trial to prove the Defendant's guilt of International Narcotics Distribution Conspiracy beyond a reasonable doubt.

MS. SCHIERBERL:  Yes, Judge.  If this case were to proceed to trial, the Government would offer witness testimony, documents, physical surveillance, and intercepts or recordings of phone calls and messages to prove its case beyond a reasonable doubt.

THE COURT:  And was discovery produced in this case?

MS. SCHIERBERL:  There's no dispute regarding discovery between the parties.  The Government did meet its obligations with respect to discovery in this case.

THE COURT:  So did the Government provide discovery to the Defendant so that defense counsel and Defendant could evaluate the application of the elements to the evidence and make an assessment of the possibility or

likelihood, however one wants to describe, that the Defendant would be convicted by a jury that would find beyond a reasonable doubt that he had committed the offense of International Narcotics Distribution Conspiracy.

MR. DIAZ:  Your Honor, if I may --

THE COURT:  I just wanted to know if the Government provided the information.

MR. DIAZ:  Sorry.

MS. SCHIERBERL:  Judge, the discovery has been provided to the Defendant in this case pursuant to the Government's obligation.

THE COURT:  Okay.  For defense?

MR. DIAZ:  Yes, Your Honor.  And I confirm that.

THE COURT:  So for the defense, defense counsel, did you have an opportunity to review the discovery provided by the Government?

MR. DIAZ:  Yes, Judge.

THE COURT:  And did you review it with your client?

MR. DIAZ:  Yes, Your Honor.

THE COURT:  And did you review with your client the application of the elements of the International Narcotics Distribution Conspiracy charge to the evidence provided by the Government and that the Government suggested it would offer at trial to prove your client's guilt beyond

a reasonable doubt?

MR. DIAZ: Yes, Judge.

THE COURT: And do you believe your client understood that analysis?

MR. DIAZ: Yes, Judge, I do.

THE COURT: Mr. Angucho Guerrero, did you review with your attorney the discovery produced by the Government?

THE DEFENDANT: Yes.

THE COURT: And did you review with your attorney the application of the elements to the evidence?

THE DEFENDANT: Yes.

THE COURT: Okay. For defense counsel, do you believe the Government would be able to establish the elements of offense of International Narcotics Distribution Conspiracy to which it's proposed your client is going to plead guilty based on the evidence described by the Government and reviewed by you and your client?

MR. DIAZ: Yes, Judge.

THE COURT: So I am going to explain now some of your rights in a criminal proceeding, particularly, if your case were to go to trial.

So for Mr. Angucho Guerrero, you have the right to persist in your plea of not guilty.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: So even if you are guilty, it's totally up to you to decide what you want to do with regard to any plea. It's not your lawyer's decision, your family's decision or anyone else's decision.

You may withdraw your previously entered plea of not guilty and plead guilty, as I am told you wish you to do, or you can go to trial. If you would like to go to trial, you would simply persist in the plea of not guilty when I ask you how you plead.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you decide to persist in the plea of not guilty to the charges contained in the indictment, you would have the right under the Constitution and Laws of the United States to a speedy and public trial by a jury, with the assistance of your lawyer, on the charges contained in the indictment. And the indictment is the document that we discussed a few minutes ago.

If your case were to go to trial, you would be presumed innocent. You wouldn't have to prove your innocence at trial. Under the American legal system, the Government, or the prosecution, has the burden to prove beyond a reasonable doubt that a defendant is guilty of the crimes charged. If at trial the Government failed to meet its burden of proof, the jury would have the obligation to

find you not guilty.

Do you understand those rights?

THE DEFENDANT:  Yes.

THE COURT:  All right.  So you should know that sometimes juries have returned verdicts of not guilty, although the jurors did believe the Defendant probably committed the crimes charged.  What the jurors were seeing in those circumstances was not that they believed the Defendant to be innocent, but rather that the Government had failed to prove the defendant's guilt beyond a reasonable doubt.

So do you understand that distinction?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Were the case to go to trial, witnesses for the Government would have to come to court and testify in your presence.  Your attorney could cross-examine those witnesses.  Your attorney could object to evidence offered by the Government.  Your attorney could offer evidence on your behalf.  Your attorney could also subpoena or compel witnesses to come to court and testify.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT:  At trial, you would have the right to testify on your own behalf if you wanted to do so, but you couldn't be forced to testify if you didn't want to do that.

Under the Constitution and Laws of the United States, no one can be forced to be a witness against himself. So if you were to go to trial and you didn't want to testify, the judge conducting the trial would instruct the jury that the jurors could not hold that fact against you.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: So what's being proposed here by you is that you are going to plead guilty to one of the crimes charged in the indictment. If the District Judge, in your case, Judge Brodie, accepts that plea, you are giving up your rights to a trial and all of the other rights that I have discussed. There won't be a trial in your case. The judge would simply enter a judgment of guilty based upon your plea.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: If you do plead guilty, I am going to have to ask you about what you did in order to satisfy myself and, in turn, the District Judge, that you are guilty of the crime charged. You are going to have to answer my questions and acknowledge your guilt. You are going to be answering those questions subject to the oath that you took a little while ago.

So in answering those questions and telling me what you did, you will be giving up your right not to testify against yourself. Instead, you are going to be making statements under oath about your guilt.

Do you understand these rights and the process here?

THE DEFENDANT: Yes, yes.

THE COURT: If you enter a plea of guilty today and admit the criminal conduct alleged in Count One of the indictment and Judge Brodie accepts your plea, you won't be able to appeal to a higher court the question of whether you committed the crime or not. That question will be resolved by your plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Are you willing to give up your right to a trial and all the other rights that I just described?

THE DEFENDANT: Yes.

THE COURT: All right. I'm going to switch gears here and I am going to talk about what's included in your plea agreement, that's the document that I marked as Court Exhibit 1.

This document is written in English. Was it translated for you from --

THE DEFENDANT: Yes.

THE COURT: -- sorry, English to Spanish, yes?

THE DEFENDANT: Yes.

THE COURT: And who did the translation?

THE DEFENDANT: The -- my attorney.

THE COURT: On the last page of the agreement, and I have the original up here, it says: I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

Are those statements correct statements?

THE DEFENDANT: Yes.

THE COURT: On that last page, there are a few signatures. So I am just going to hold up my copy here.

And right below those lines that I just read is a signature above where your name is printed.

Is that your signature for the Defendant?

THE DEFENDANT: Yes.

THE COURT: And then defense counsel, did you sign where it says, "approved by"?

MR. DIAZ: Yes, Judge.

THE COURT: And did you also sign where it says, "translated by"?

MR. DIAZ: Yes, Judge.

THE COURT: All right. And then for the Government, did you sign this document?

MS. SCHIERBERL: Yes, Judge.

THE COURT: And then it says below with an electronic signature: "Approved by Francisco Navarro."

What's his role in this case?

MS. SCHIERBERL: He's the chief of our International Narcotics and Money Laundering Section, my supervisor, and the individual who reviewed and approved the plea.

THE COURT: I will just note for the record that the plea agreement is dated August 7th.

So Mr. Angucho Guerrero, did you review this entire agreement, Court Exhibit 1, with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand everything included in the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Let me ask the Government, does the Government represent that the plea agreement marked as Court Exhibit 1 contains the entirety of any understanding of the U.S. Attorney's Office has reached with this Defendant? There are some previous interactions with the Government referred to in paragraph 15. I assume that the understanding is that those are incorporated into Court Exhibit 1. So does this plea agreement contain all of the understanding that the U.S. Attorney's Office has entered

into with this Defendant?

MS. SCHIERBERL: Yes, Judge.

THE COURT: Defense counsel, did you read the entire Court Exhibit 1?

MR. DIAZ: Yes, Judge, I have.

THE COURT: And do you believe that Court Exhibit 1, the plea agreement, contains the entire understanding that your client has entered into with the U.S. Government?

MR. DIAZ: Yes, Judge.

THE COURT: All right. For Mr. Angucho Guerrero, is there anything in this agreement, Court Exhibit 1, that is not clear to you?

THE DEFENDANT: No.

THE COURT: Other than the promises contained in the written agreement, Court Exhibit 1, has anyone made any other promises that have caused you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you to get you to agree to this plea agreement, Court Exhibit 1?

THE DEFENDANT: No.

THE COURT: I'm going to go over some parts of this plea agreement in some detail.

We're going to start with reviewing what the penalties are for the crime to which it's proposed that you

are going to plead guilty.  Just to remind you, what's proposed is that you are going to plead guilty to Count One of the indictment, which is an International Cocaine Distribution Conspiracy in violation of Federal Law 21 United States Code Sections 963, 960(b)(1), (b)(2), and 959(d).

The count carries the following statutory penalties:  A maximum term of imprisonment of life.  A minimum term of imprisonment of ten years.

Do you understand those terms?

THE DEFENDANT:  Yes.

THE COURT:  There is a provision for what's called supervised release.  When you are placed on supervised release, you are subject to many limitations on your liberty.  Supervised release occurs if you are sentenced to a term of imprisonment, which, obviously, this provides for, and you have been released.  The minimum supervised release term is five years.  The maximum supervised release term is life.  Supervised release would begin after any term of imprisonment.  If you were to violate a condition of release, you could be sentenced for up to five years of imprisonment without credit for pre-release imprisonment time or time previously served on post-release supervision.

Do you understand?

THE DEFENDANT:  Yes.

THE COURT: All right. I should just mention in connection with the term of imprisonment that there is no parole in the federal system. So that if you are sentenced to a period of incarceration, you should not expect that you would be released on parole.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The maximum fine that can be imposed is $10 million.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Sir, when you are asked a question, you need to give your answer out loud and it will be translated. And the reason for that is to go back to the point I made earlier, which I'm helping Judge Brodie with this, and Judge Brodie is going to read the transcript. And the court reporter can only take down the words that are spoken.

So additional possible penalties do not include restitution, but you do have to pay $100 special assessment.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And there are additional penalties which we are going to go over in a minute of removal from the United States, which is described in paragraph 13 of the

plea agreement. We are going to go over that and some related documents. And additionally, criminal forfeiture, which is described in paragraphs 6 and 7.

Let's talk about removal.

Do you have the executed immigration papers?

MS. SCHIERBERL: I have the executed.

THE COURT: Can I get those?

MS. SCHIERBERL: I have the executed copy here, Your Honor. I would just note we're missing the signature of my colleague, which I will obtain, and the forthcoming signature of Judge Brodie.

May I approach?

THE COURT: Yes. You can give it to my deputy. Thanks.

MS. SCHIERBERL: Thank you.

THE COURT: So let's talk about removal first.

As I mentioned, this is described in paragraph 13 of the agreement.

So it says that you consent to your removal from the United States.

THE DEFENDANT: Yes.

THE COURT: And that there have been some documents provided to you in connection with your removal. We're going to go over those in a minute. It also says that you acknowledge that you signed a plea statement in support

of judicial removal proceedings.  We're going to go over that in a moment.

THE DEFENDANT:  Yes.

THE COURT:  And as described in the papers, the removal plea statement, you concede that you are removable from the United States.  You waive any right that you may have to apply for relief or protection from a removal.  You request that an order be issued for your removal to the country of Columbia.  And you request that the Court at the time of sentencing -- I will just remind you, that will be Judge Brodie -- order that you be removed from the United States promptly from your release from confinement.  And if you are not sentenced to a term of imprisonment, promptly upon your sentencing.

Do you understand everything that's included in paragraph 13?

THE DEFENDANT:  Yes.  Yes.

THE COURT:  Do you, in fact, consent to your removal from the United States?

THE DEFENDANT:  Yes.

THE COURT:  And do you agree with the representations and requests that I just reviewed that are included in paragraph 13?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  Let's go over, then, the other

papers that are related to the immigration proceedings.

So there's a notice of intent to request judicial removal. It's been signed by Ms. Schierberl, but it hasn't been signed by her colleague. Before you have the sentencing before Judge Brodie, which we will get to in a little while, she'll have this document signed by Mr. Edwards-Balfour.

This document, the Notice of Intent to Request Judicial Removal, is written in English.

Was it translated for you from English to Spanish?

THE DEFENDANT: Yes.

THE COURT: Do you understand everything in the document?

THE DEFENDANT: Yes.

THE COURT: And did you have a sufficient opportunity to review it with your attorney?

THE DEFENDANT: Yes.

THE COURT: All right. Another document is one called the Factual Allegations in Support of Judicial Removal.

So this provides various statements about yourself and your case and the application of immigration law to your situation. It's written in English.

Was this document translated for you from English to Spanish?

THE DEFENDANT: Yes.

THE COURT: Let me just ask: Was it your attorney who translated the Notice of Intent to Request Judicial Removal as well as -- hang on -- as well as the Factual Allegations in Support of Judicial Removal?

THE DEFENDANT: Yes, yes.

THE COURT: Did you review this document, the Factual Allegations in Support of Judicial Removal, with your attorney?

THE DEFENDANT: Yes.

THE COURT: And do you understand everything in this document?

THE DEFENDANT: Yes.

THE COURT: Is the information included in it correct?

THE DEFENDANT: Yes.

THE COURT: There is also, let's just review it, a Proposed Order of Judicial Removal that's also written in English.

Was this translated for you into Spanish by your attorney?

THE DEFENDANT: Yes.

THE COURT: And did you review it with your attorney?

THE DEFENDANT: Yes.

THE COURT:  And do you understand everything in the document?

THE DEFENDANT:  Yes.

THE COURT:  And this is the document the Government is going to submit to Judge Brodie in connection with the request that you be removed from the United States to Columbia.

Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  All right.  There is also a document called the Defendant's Plea Statement in Support of Judicial Removal.  It's written in English.

Was it translated for you from English to Spanish?

THE DEFENDANT:  Yes.

THE COURT:  Was it your attorney who did the translation for you?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand everything in the document?

THE DEFENDANT:  Yes.

THE COURT:  And is everything included in the document accurate?

THE DEFENDANT:  Yes.

THE COURT:  And did you review with your attorney the consequences of this application which, if granted by

Judge Brodie, will mean your removal from the United States?

THE DEFENDANT: Yes.

THE COURT: And did you review with your attorney the various rights that you are waiving in this document, the Defendant's Plea Statement in Support of Judicial Removal?

THE DEFENDANT: Yes.

THE COURT: Did you sign this form, the Defendant's Plea Statement --

THE DEFENDANT: Yes.

THE COURT: -- in Support of Judicial Removal?

I just want to make sure you understand the question.

Did you sign the form?

THE DEFENDANT: Yes.

THE COURT: And defense counsel, did you sign the form?

MR. DIAZ: Yes, Judge.

THE COURT: Meaning the statement in support of the removal?

MR. DIAZ: Yes, Your Honor.

THE COURT: I will just note that the package of materials also includes a concurrence of the United States Immigration and Customs Enforcement with the request by the U.S. Attorney for a Judicial Order of Removal.

This is written in English.

Was it translated for you by your attorney into Spanish?

THE DEFENDANT: Yes.

THE COURT: And did you review this concurrence with your attorney?

THE DEFENDANT: Yes.

THE COURT: And do you understand the concurrence?

THE DEFENDANT: Yes.

THE COURT: I am going to hold on to these while we finish this, but at the conclusion of the proceeding, I am going to return them to the U.S. Attorney along, when we get to it, with the plea agreement. These documents, then, at a later date will be provided to the District Judge.

With regard to all of the documents that I just asked you about with regard to immigration, did you agree to those documents and sign them voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: And did anyone make any threats or promises to you with regard to the documents in support of removal from the United States?

THE DEFENDANT: No.

THE COURT: Let's go back to the plea agreement, which, just to remind you, is the document that is marked as

Court Exhibit 1.

So we had gone over the possible consequences of your guilty plea and, as I mentioned earlier, criminal forfeiture is one of the possible consequences. It's described in paragraphs 6 and 7 of the agreement.

Did you review knows forms?

THE DEFENDANT: Yes.

THE COURT: I'm sorry, I said forms. I meant, did you review those paragraphs?

THE DEFENDANT: Yes.

THE COURT: So let me just ask you a few other global questions, and then we will talk about the sentencing process.

So the plea agreement, Court Exhibit 1, covers several others matters related to your plea and to your sentencing.

Do you understand everything included in this document?

THE DEFENDANT: Yes.

THE COURT: And did you review them with your attorney?

THE DEFENDANT: Yes.

THE COURT: One thing I am just going to note for the record is that there were two typos in the document. In paragraph 11, there was an internal reference to paragraph 8

and it should have been to paragraph 9, so that correction has been made in handwriting. And it's been initialled by, I believe, by you, defense counsel, and the Government.

So let me just go over that.

For the Defendant, do you understand the correction for the internal reference in paragraph 11 to paragraph 8, to paragraph 9?

THE DEFENDANT: Yes.

THE COURT: And did you initial that change or those changes, I'm sorry?

THE DEFENDANT: Yes.

THE COURT: Defense counsel, do you agree with and did you initial those corrections of the paragraph 8 references to paragraph 9?

MR. DIAZ: Yes, Judge.

THE COURT: And for the Government, did you initial the changes from paragraph 8 to paragraph 9 and paragraph 11?

MS. SCHIERBERL: Yes, Judge.

THE COURT: Let's talk about how the sentencing process works.

Generally speaking, the judge does not have complete discretion to impose a sentence outside of the statutory minimum and maximum sentences set forth in the statute.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: So what's proposed, you are going to plead guilty to a count that includes a maximum term of life imprisonment and a minimum term of imprisonment of ten years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: In terms of the sentencing process, the way it works is first the judge decides whether she is going to accept your plea. If she does that, she moves on to the sentencing process.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The judge will first consider what are called the advisory sentencing guidelines which have been issued by the United States Sentencing Commission to determine what's a reasonable sentence in a criminal case. These guidelines are only advisory, but they are an important consideration for the judge and the judge will take them into account in determining what sentence to give you.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Did you discuss the sentencing

guidelines with your attorney and how those guidelines might apply in your case?

THE DEFENDANT: Yes.

THE COURT: And the guidelines will also, in your case, overlap with the statutory penalties that I just described.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: The second step in the sentencing process is for the judge to consider whether there are any unique factors in your case that would allow the judge to depart from the advisory sentencing guidelines. So sometimes a judge might depart upwardly or sometimes a judge might depart downwardly.

And then the third step, the judge will consider factors that are included in a federal statute called 18 United States Code Section 3553(a). The judge weighs the factors in that statute against the circumstance and facts of your case and it might be that the judge decides to impose a guidelines sentence or it might be that she imposes the non-guidelines sentence. The practical import for you is that until the date of sentencing, you cannot know for certainty what the guidelines will be or whether there will be ground for the judge to depart from those guidelines. And you cannot know if there is any reason for the judge to

impose a guidelines sentence or a non-guidelines sentence.

Do you understand the process?

THE DEFENDANT: Yes, yes.

THE COURT: It may be that circumstances change between now and the time of sentencing, but the uncertainty with regard to what the sentencing guidelines would be for your case and what the circumstances are that the judge will be able to take into account with regard to the sentencing will not be a reason for which you will be permitted to change your guilty plea.

Do you understand?

THE DEFENDANT: Yes.

THE COURT: Prior to your sentencing, the judge will receive what's called a Presentence Report from the Probation Department. The Probation Department will review lots of information about you and your circumstances and prepare that report and provide the judge with a recommended sentencing guideline range. You and your lawyer will have the chance to read the report and challenge anything in it. And the Government will also have the opportunity to comment on the report.

So as I said, there's lots of information to be developed between now and the time of sentencing.

Your plea agreement covers some information related to the anticipated sentencing guidelines for your

case. And those are outlined in paragraph 2 of the plea agreement.

In regard to the guidelines calculation in paragraph 2, it provides that you agree and stipulate that the guidelines range and the statutory mandatory minimum for your case should be calculated based upon a quantity and drug type of at least 1,452 kilograms of cocaine, which is what we call a Schedule II controlled substance, and that you waive your right to a *Fatico* hearing, which is a reference to a case, a legal case, but it's a description of a hearing about those issues.

Did you review this stipulation with your attorney?

THE DEFENDANT: Yes.

THE COURT: And do you understand it?

THE DEFENDANT: Yes.

THE COURT: And do you agree to it?

THE DEFENDANT: Yes.

THE COURT: All right. As I said, it's hard to know what the sentencing guidelines will be in any case before you get to sentencing, but I am going to ask the attorneys if they have anything they want to say on the record with regard to issues related to the sentencing guidelines in your case.

So first for the Government and then for defense

counsel.

MS. SCHIERBERL: Thank you, Judge.

Given this is a timely plea and the Government intends to move for the third acceptance point, the Government estimates an adjusted offense level of 35, a Criminal History Category of I, and a corresponding range of imprisonment of 168 to 210 months, noting there is a statutory mandatory minimum of ten years in this case.

THE COURT: All right.

Defense counsel, do you agree that what the Government said is accurate?

MR. DIAZ: Yes, Judge.

THE COURT: Did you review those sentencing guidelines calculations with your client?

MR. DIAZ: Yes, Judge. We reviewed the base offense level for the offense, Criminal History Category, and reduction of points for a plea, timely plea and acceptance of responsibility, and advised him that this is all an estimation.

THE COURT: And do you believe he understood what you were explaining to him?

MR. DIAZ: Yes, Your Honor.

THE COURT: All right.

Mr. Angucho Guerrero, did you review with your attorney the Government's estimate with regard to the

sentencing guidelines?

THE DEFENDANT: Yes.

THE COURT: And do you understand the sentencing guidelines as he explained them to you?

THE DEFENDANT: Yes.

THE COURT: And do you understand that, at best, that the information provided now is an estimate?

THE DEFENDANT: Yes.

THE COURT: And do you understand the estimate could change by the time you get to sentencing?

THE DEFENDANT: Yes.

THE COURT: And do you understand that the lack of certainty today with regard to what the sentencing guidelines will be in your case will not be a reason upon which you would be permitted to withdraw your guilty plea?

THE DEFENDANT: Yes.

THE COURT: You should know that the District Judge in your case is not going to be bound by anything in the plea agreement or what the Government or your attorney estimates the guidelines sentencing terms to be.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Additionally, in paragraph 3 of the plea agreement, you know, there's more information, but I want to focus on one particular sentence, which is the first

sentence of the paragraph which says that: The Defendant agrees not to file an appeal or otherwise challenge by petition pursuant to 28 United States Code Section 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment at or below 188 months.

So this is a waiver of your appellate rights with regard to the conviction or sentence, if you get a certain sentence or below that 188 months.

So do you understand this paragraph and the appellate waiver?

THE DEFENDANT: Yes.

THE COURT: Did you review that with your attorney?

THE DEFENDANT: Yes.

THE COURT: Did anyone make any threats or promises to you to get you to agree to the appellate waiver?

THE DEFENDANT: No.

THE COURT: Do you want to go ahead with this proposed guilty plea, even though this plea agreement includes this appellate waiver?

THE DEFENDANT: Yes.

THE COURT: And do you want to go ahead with the proposed guilty plea even though your plea agreement includes the request for you to be removed from the United

States?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about the plea agreement?

THE DEFENDANT: No.

THE COURT: Do you understand it in its entirety?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about anything that I have covered here today?

THE DEFENDANT: No.

THE COURT: Let me ask your attorney.

Do you know of any reason why Mr. Angucho Guerrero should not enter a plea of guilty to the first count of the indictment, the international conspiracy count?

MR. DIAZ: No, Your Honor.

THE COURT: Are you aware of any viable legal defense to the charges contained in the indictment?

MR. DIAZ: I am not, Your Honor.

THE COURT: In your professional opinion, is it in Mr. Angucho Guerrero's best interest to proceed with the proposed guilty plea?

MR. DIAZ: Yes, Your Honor.

THE COURT: And in your professional opinion, is it in Mr. Angucho Guerrero's interest to enter the proposed guilty plea pursuant to the plea agreement that's been

marked as Court Exhibit 1?

MR. DIAZ: Yes, Your Honor.

THE COURT: And do you believe he fully understands all of the provisions of the plea agreement?

MR. DIAZ: I do, Your Honor.

THE COURT: All right.

For Mr. Angucho Guerrero, do you need an opportunity to speak with your attorney before we move to the change of plea?

THE DEFENDANT: Yes. A moment.

THE COURT: I am just going to put on some background noise so that we don't hear the conversation.

MR. DIAZ: Thank you, Judge.

THE COURT: Let us know what you are ready.

(Pause in proceedings.)

MR. DIAZ: Thank you, Judge.

THE COURT: So for the Defendant, did you have a sufficient opportunity to speak with your attorney?

THE DEFENDANT: Yes.

THE COURT: Are you prepared to move ahead with the proposed change of plea?

THE DEFENDANT: Yes. Yes.

THE COURT: All right. So I am just going to remind you, we had gone over the elements, so I am going to now ask you what it is that you did such that you are, in

fact, guilty of the charge of International Narcotics Distribution Conspiracy in violation of federal law and what it is that you did such that you satisfy the elements that we reviewed earlier of this count. So if you could tell me what it is that you did.

MR. DIAZ: Would you like him to stand, Your Honor?

THE COURT: No.

I can see that Defendant has a paper. It's fine if he uses it to refresh his recollection, but he shouldn't just read it. We need to know what his recounting of the events is. He can stay seated.

THE DEFENDANT: In December of 2016 until October of 2017, myself and other individuals conspired to distribute more than five kilograms of cocaine in the United States. For instance, during that time, I transported more than five kilograms of cocaine in Columbia which I knew were to be imported into the United States. When I did this, I knew that I was doing it and that it was a crime.

THE COURT: Did you voluntarily agree to join the conspiracy?

THE DEFENDANT: Yes.

THE COURT: And the cocaine that you are discussing, was it going to be imported from Columbia to the United States?

THE DEFENDANT: Yes.

THE COURT: Let me ask your lawyer a question.

What is the connection to the Eastern District of New York, if any?

MR. DIAZ: Your Honor, the drugs were going to be imported through the Eastern District of New York.

THE COURT: All right. Do you want to elicit that from your client?

MR. DIAZ: Yes, Judge.

Can I have a moment, Your Honor?

(Pause in proceedings.)

THE DEFENDANT: Yes. I knew it was coming to the Eastern District of New York.

THE COURT: And the "it" is the cocaine, just so we are clear?

THE DEFENDANT: The cocaine, yes.

THE COURT: All right.

For the defense counsel, is there anything else you would like your client to add to that allocution?

MR. DIAZ: No, Your Honor.

THE COURT: For the Government, is that allocution satisfactory?

MS. SCHIERBERL: Yes, Judge.

I would only add that venue is also appropriate here under Title 21 United States Code 959(d). This was the

first district the Defendant was brought upon extradition.

THE COURT: Defense counsel, do you agree that venue is correct on that basis, as well?

MR. DIAZ: Yes, Your Honor.

THE COURT: Let me ask you a few other questions.

Are you making this plea voluntarily and of your own free will?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any threats or promises to you other than what's included in the plea agreement to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty to this count, Count One of the indictment, because you are, in fact, guilty of that crime?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promises to you as to what your sentence may be?

THE DEFENDANT: No.

THE COURT: Do you want to go ahead with this guilty plea despite the fact that your plea agreement includes the appellate waiver?

THE DEFENDANT: Yes.

THE COURT: Do you want to go ahead with this plea despite the fact that your plea agreement with the

Government includes the request that you be removed from the United States?

THE DEFENDANT: Yes.

THE COURT: Based on what's been said here today by the attorneys and by Mr. Angucho Guerrero, I believe he understands the charges against him; that he understands the sentencing process; that he understands all of the terms of the plea agreement; that he understands his rights in a criminal proceeding; that he understands the consequences of his plea, including the waiver of those rights. And I believe there is a factual basis on the record for the plea to Count One of the indictment, the International Cocaine Distribution Conspiracy in violation of 21 United States Code Sections 963, 960(b)(1), (b)(2) and 959(d).

So for those reasons, I respectfully recommend to the District Judge that she accept your plea.

All right. So what we are going to do in terms of next steps are there is a sentencing date of April 30, 2025, at 10:00 a.m. As I mentioned, the Probation Department is going to prepare a report about you and provide that to the District Judge.

I am going to ask defense counsel, do you want to still let Probation know that you would like to be part of the interview process?

MR. DIAZ: Yes, Judge.

THE COURT:  All right.  We'll do that.

I am going to give the plea agreement, Court Exhibit 1, and the immigration-related documents back to the Government.  If you could provide a copy to defense counsel so they have the executed copy, I'd appreciate that.

And just remind the Government, with regard to the Notice of Intent to Request Judicial Removal, that needs your colleague, Mr. Edwards-Balfour's signature.  And then this will need to be provided to Judge Brodie.

MS. SCHIERBERL:  Yes, Judge.

THE COURT:  Either Jenny or Suzanne, can you give that back to the Government?

We went over whether you had any medical conditions, but I am just going to ask again.  I assume the understanding here is the Defendant is going to remain in custody.  So I ask; is that correct?

MR. DIAZ:  Yes, Judge.

THE COURT:  Any medical issues that need attention?

MR. DIAZ:  No, Your Honor.

THE COURT:  Anything else that we should put on the record here?

MR. DIAZ:  Not from the Defendant, Judge.

MS. SCHIERBERL:  May I just have a very brief moment to confer with defense, Your Honor?

THE COURT: Sure.

(Pause in proceeding.)

MS. SCHIERBERL: Very briefly, Your Honor, after conferring with defense counsel, there was a small reference in today's record the Government would move to seal. I am happy to describe it for Your Honor. I believe Your Honor made a very brief reference to prior meetings with the Government in ensuring the Court that the Defendant understood that the plea agreement set forth the entirety --

THE INTERPRETER: The interpreter requests that the Assistant U.S. Attorney speak more loudly, please.

MS. SCHIERBERL: Apologies.

THE COURT: You can have a seat.

MS. SCHIERBERL: I believe in ensuring the Court --

THE COURT: The promises outside the record, right?

MS. SCHIERBERL: That's right, Your Honor.

In an abundance of caution, the Government would move, I believe, with the consent of defense, to seal simply that portion of the record.

MR. DIAZ: We would join in that application, Judge.

THE COURT: Does that achieve your goal? I will let you talk about it.

MS. SCHIERBERL:  Briefly, Your Honor.  Understood.

(Pause in proceedings.)

MS. SCHIERBERL:  Thanks, Judge.  The Government will withdraw the motion.

THE COURT:  So we are not doing anything with the transcript.  The documents are going to be with the Government.  The documents meaning the plea agreement and associated immigration papers.  And you will provide a copy to the defense and to Judge Brodie.  And then we held onto the consent to take a plea before the Magistrate Judge, and we will put that on the docket.

Anything else we should cover here today?

MS. SCHIERBERL:  Nothing from the Government.

MR. DIAZ:  Nothing further.

THE DEFENDANT:  Your Honor.  Thank you.

THE COURT:  All right.  Have a good day.

(Matter concluded.)

*          *          *          *          *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Jamie Ann Stanton                    August 7, 2024
_____          _____
    JAMIE ANN STANTON                          DATE